UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| JOSHUA MELLO,<br>　　　Plaintiff,<br>　　v.<br><br>TIMOTHY VESEY, in his individual and official capacity as Principal of Western Hills Middle School; CRANSTON PUBLIC SCHOOLS; CRANSTON SCHOOL DEPARTMENT; JEANNINE NOTA-MASSE, in her official capacity as Superintendent; NORMA COLE, in her official capacity as Assistant Superintendent; RICHARD WILLETTE, in his individual and official capacities as Guidance Counselor at Western Hills Middle School; ROXANNE GUSTAFSON, in her official capacity as Executive Director of Curriculum, Assessments, and Grants for Cranston Public Schools; DONNA-MARIE FRAPPIER, in her official capacity as Chief Technology Officer for Cranston Public Schools; MICHAEL SIMPSON, in his official capacity as Executive Director of Pupil Personnel Services for Cranston Public Schools; JOE BALDUCCI, in his official capacity as Chief Financial Officer for Cranston Public Schools; ZAC FERRELL, in his official capacity as Executive Director of Secondary Programs for Cranston Public Schools; CRANSTON SCHOOL COMMITTEE, in its official capacity as the governing body of Cranston Public Schools; TONYA MORENA, in her individual capacity,<br><br>　　　Defendants. | No. 25-cv-520-JJM-AEM |

## ORDER

Plaintiff Joshua Mello filed this suit against Cranston Public Schools and multiple individual actors[1] (hereinafter "Defendants") involved in what he alleges are constitutional, federal, and state law violations rooted in Defendants' refusal to honor Mr. Mello's parental decision to opt his daughter, a Cranston Public School student, out of participating in certain surveys and the allegedly retaliatory conduct in the aftermath. Mr. Mello filed an Amended Complaint[2] and Defendants now move to dismiss all claims under Federal Rules of Civil Procedure Rule 12(b)(6) for failure to state a claim. ECF No. 13. Three Defendants also argue that they are entitled to qualified immunity on three claims.

---

[1] Mr. Mello sued Timothy Vesey (Principal, Western Hills Middle School); Cranston Public Schools; Jeannine Nota-Massie (Superintendent, Cranston Public Schools); Norma Cole (Asst. Superintendent, Cranston Public Schools); Richard Willette (Guidance Counselor), Roxanne Gustafson (Executive Director of Curriculum, Assessments, and Grants for Cranston Public Schools); Donna-Marie Frappier (Chief Technology Officer for Cranston Public Schools); Michael Simpson (Executive Director of Pupil Personnel Services for Cranston Public Schools); Joe Balducci (Chief Financial Officer for Cranston Public Schools); Zac Ferrell (Executive Director of Secondary Programs for Cranston Public Schools); and the Cranston School Committee.

[2] The Amended Complaint added and individual capacity claim against Tonya Morena, his daughter's mother. Upon an in forma pauperis 28 U.S.C. § 1915(e)(2)(B)(ii) screening, the Court dismissed Ms. Morena from the case.

2

## I.   BACKGROUND

Mr. Mello's claims arise out of his decision in October 2022[3] to opt his daughter out of most[4] school surveys, screenings, assessments, and data collection programs at her Cranston school.  At that time, Mr. Mello wrote to Principal Vesey and indicated that he did not want his daughter to participate.  Mr. Vesey reached out to Ms. Morena to inform her of Mr. Mello's opt-out decision regarding their daughter. He and Ms. Morena have an equal custody agreement giving them an equal role in making parenting decisions.[5]  She disagreed with the opt-out and Mr. Vesey informed Mr. Mello that Cranston would not honor his opt-out request without a Family Court order.  Mr. Mello alleges that Defendants administered the Satchel Pulse[6] survey to his daughter against his wishes.

Mr. Mello filed a complaint with the Rhode Island Commissioner of Education Angélica Infante-Green, informing her that Cranston Public Schools and Mr. Vesey were violating his parental rights under the Protection of Pupils' Rights Amendment

---

[3] Several years earlier, Mr. Mello told the school that he did not want his daughter to participate in two different surveys and the school administrators honored that directive.

[4] Mr. Mello did agree to let his daughter take Xello surveys after consulting with Mr. Vesey and Mr. Willette.

[5] Mr. Mello and his ex-wife parent in accordance with a Family Court order that designates them as having equal custodial authority.  The Order states in part "Each party agrees to cooperate and coparent the minor child with the other. * * * Each party is a fit and proper person to be joint custodial parents to the minor child. The parties shall work out a parenting time schedule together."

[6] The Satchel Pulse survey is designed to gather feedback on students' social-emotional learning skills, helping educators understand and support their development in a school environment.

("PPRA"), 20 U.S.C. § 1232h, which lists seven categories of information that school surveys cannot ask about without a parent's permission.  Mr. Mello requested intervention to halt the unlawful survey practices.  He also filed a complaint with the United States Department of Education ("DoE").  Post-complaints, Mr. Mello requested the survey questions, which Defendants refused to provide.  Upon its review of the survey and investigation, the DoE determined that Cranston did not violate the PPRA because the survey did not wade into any of the proscribed categories.  It did, however, conclude that where Cranston faced two different directives from co-equal parents, it should have honored the decision of the objecting parent where the court order indicated the parents were on equal footing, decision-making-wise.

During the same school year, Mr. Mello alleges that Mr. Vesey summoned a police presence to a concert his daughter was performing in at Cranston High School West.[7]  School Resource Officer John Rocchio wore a body–worn camera and Mr. Mello alleges that his presence was meant to intimidate him from asserting his parental right to opt-out of surveys and to retaliate against him for doing so.

In response to these alleged violations, Mr. Mello issued a 30-day demand letter to Superintendent Nota-Masse, demanding redress, corrective policies, and

---

[7] Mr. Mello has had a contentious relationship with several administrators in the Cranston Public Schools, resulting in police involvement and a no-contact/restraining order restricting Mr. Mello from being present at Western Hills Middle School.  This is Mr. Mello's seventh lawsuit filed in this District in the last two years.  Those incidents are irrelevant here except that this history informed some of Defendants' conduct leading to this lawsuit.

compensation.  His demand was ignored.  He filed this suit, alleging that by ignoring his directives, requiring a new Family Court order when an operative one already existed, refusing to allow him to inspect the survey questions, and conspiring with police to intimidate him from exercising his rights, each Defendant violated his rights under PPRA, the Constitution, and Rhode Island state law.

## II.    STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a complaint must contain enough factual matter, accepted as true, to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Court must accept Plaintiffs' allegations as true and construe them in the light most favorable to them.  *Gargano v. Liberty Int'l Underwriters*, 572 F.3d 45, 48 (1st Cir. 2009).

"A Rule 12(b)(6) motion will be granted only if, when viewed in this manner, the pleading shows no set of facts which could entitle plaintiff to relief."  *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45-48 (1957)).  These "minimal requirements are not tantamount to nonexistent requirements.  The threshold may be low, but it is real, and it is the plaintiff's burden to take the step which brings his case safely into the next phase of the litigation."  *Gooley*, 851 F.2d at 514.  "[A] plaintiff . . . is . . . required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  *Id.* at 515.  "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the

possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." *SEC v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (citing *Twombly,* 550 U.S. at 555).

## III.   DISCUSSION

Mr. Mello brings the following claims: violation of his parental rights under the PPRA, 20 U.S.C. § 1232h (Counts I, V[8]); violation of his Fourteenth Amendment rights (Count II); a municipal liability claim against Cranston under *Monell* (Count III); First Amendment retaliation (Count VI); Civil Conspiracy under § 1983 and Rhode Island law (Counts VII, VIII); and tortious interference with parental rights[9] (Count IX).  All Defendants move to dismiss all claims for failure to state a claim upon which relief can be granted.  But four Defendants, Mr. Vesey, Ms. Cole, Ms. Nota-Massie, and Mr. Willette, move to dismiss Counts I, II, and V relating to the PPRA under the qualified immunity defense.  Because the Supreme Court has emphasized "the importance of resolving immunity questions at the earliest possible stage in litigation," the Court will address that argument  as to those three Defendants first. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam).

_____

[8] Defendants point out that Mr. Mello does not list a Count IV in his Amended Complaint and refers in their briefing to Count V as Count IV.  Because the Court finds the renumbering of claims confusing, it will refer to the counts as Mr. Mello does, omitting any reference to a Count IV.

[9] Count IX was against Ms. Moreno only.  Because the Court dismissed her from the Amended Complaint, this count is also dismissed.

### A.    PPRA and Fourteenth Amendment – Counts I, II, V

Qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity does not, however, "shield public officials who, from an objective standpoint, should have known that their conduct was unlawful." *Pagán v. Calderón*, 448 F.3d 16, 31 (1st Cir. 2006) (citing *Davis v. Scherer*, 468 U.S. 183, 193 (1984)).

To determine whether a public official is entitled to qualified immunity, the Court first asks, "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right." *See Pearson,* 555 U.S. at 232. If the answer is "yes," then the Court asks, "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* (citation omitted). The Court may consider the second inquiry first and grant immunity "without undertaking the 'essentially academic exercise' of ascertaining whether the specific facts depict a constitutional violation if 'it is plain that a constitutional right is not clearly established.'" *Haley v. City of Bos.*, 657 F.3d 39, 47 (1st Cir. 2011) (quoting *Pearson*, 555. U.S. at 237).

A right is "clearly established" and a public official "may be held liable for violating a constitutional right only if '[t]he contours of the right [are] sufficiently clear [such] that a reasonable official would understand that what he is doing violates that right.'" *Haley*, 657 F.3d at 48 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The court looks at "whether the contours of the right would have been

'sufficiently well-defined at the critical time' and, if so, 'whether it would have been clear to an objectively reasonable official, situated similarly to [the defendants], that the actions taken or omitted contravened the clearly established right.'" *Haley*, 657 F.3d at 48 (quoting *Limone v. Condon*, 372 F.3d 39, 48 (1st Cir. 2004)).

Mr. Mello's Count I alleges that Defendants disregarded his opt-out request under 20 U.S.C. § 1232h(b) and conditioned its compliance with his request on obtaining a new Family Court order; Count II alleges that Defendants violated his Fourteenth Amendment rights by overriding his decision to opt his daughter out of surveys; and Count V alleges that Defendants failed to provide him with the survey questions despite his requests. Defendants Nota-Masse, Vesey, Cole, and Willette argue that they are immune from these claims because they could not have known that they were violating Mr. Mello's rights by overriding any of his directives because the survey did not ask questions about subjects[10] prohibited in the statute.

In considering whether the right alleged was clearly established, the Court considers the outcome of Mr. Mello's complaint to the DoE. In its decision, the DoE

---

[10] The PPRA states that a student does not have to reveal information about (1) political affiliations; (2) mental and psychological problems potentially embarrassing to the student or his family; (3) sex behavior and attitudes; (4) illegal, anti-social, self-incriminating and demeaning behavior; (5) critical appraisals of other individuals with whom respondents have close family relationships; (6) legally recognized privileged or analogous relationships, such as those of lawyers, physicians, and ministers; or (7) income (other than that required by law to determine eligibility for participation in a program or for receiving financial assistance under such program), unless the student is an adult or an emancipated minor and consents or their parent consents. 20 U.S.C. § 1232h(b).

confirmed that the "Survey did not ask the Student questions implicating any of PPRA's Protected Areas"… "PPRA would not be applicable, and the district would not have been required to notify parents in advance of the survey, afford the Parent the opportunity to opt the Student out of participation in the survey, nor act on the Parent's request to do so." *See* ECF No. 10-1 at 13.  Because the DoE determined that Defendants did not violate PPRA by administering the survey without consent, the right was not clearly established so the Court cannot conclude that Defendants should have known that they were violating any of Mr. Mello's rights in administering the survey to his daughter.  Because the Court finds that Mr. Vesey, Ms. Cole, Ms. Nota-Masse, and Mr. Willette are entitled to qualified immunity[11] for Counts I, II, and V, it dismisses those counts.

The Court will move on to the remaining claims in Counts III, VII, and VIII.

### B.    *Monell* claim – Count III

Mr. Mello brings a municipal liability claim under *Monell v. Department of Social Services*, alleging that Defendants had in place and followed an official policy or custom that violated his constitutional rights.   436 U.S. 658, 692 (1978).

---

[11] Defendants argue in the alternative that Mr. Mello's claims under the PPRA fail because that statute does not provide for a private right of action.  While there is no First Circuit precedent indicating as such, the Court believes that the Supreme Court's logic in *Gonzaga University v. Doe* relating to the Family Education Rights and Privacy Act ("FERPA") would lead to the conclusion that the PPRA also does not provide an individually enforceable right.  536 U.S. 273, 287 (2002) (no private right of action where Congress did not evidence intent to create one).

Defendants point to the Amended Complaint, arguing that dismissal is appropriate because Mr. Mello fails to identify any city policy or custom and does not state a claim.

A municipality "may be liable under [section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 692). "However, municipalities are not vicariously liable under section 1983 for the actions of their non-policymaking employees." *Haley*, 657 F.3d at 51 (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403–04 (1997)). "Thus, a plaintiff who brings a section 1983 action against a municipality bears the burden of showing that, 'through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Id.* (quoting *Brown*, 520 U.S. at 404 (emphasis in original)). A plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." *Id.* at 403 (quoting *Monell*, 436 U.S. at 694).

In attempting to support his *Monell* claim, Mr. Mello seems to argue that Defendants' decision to ignore his opt-out directive was not a single occurrence, but part of a Cranston Public School policy and custom that, as applied, violated his rights. Mr. Mello's specific allegations focus on the rejection of his demand letter, Defendants' disregard for his parental rights by failing to enforce PPRA and parental consent protections under the Fourteenth Amendment and state law, and district administrators' failure to implement and enforce parental opt-outs. ECF No. 10 ¶¶ 48, 50.

Considering these allegations, the Court finds that each is based on a single incident – his opt-out request leading to Mr. Vesey's decision to consult with Ms. Moreno. "[P]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *See Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985). Other than a conclusory allegation, Mr. Mello fails to identify a policy or custom attributable to a specific individual policymaker where Defendants deliberately acted to ignore parental survey opt-out requests involving survey containing questions about categories of information prohibited by the PPRA.

Moreover, Mr. Mello also alleges that he previously requested that his daughter be opted out of at least two surveys and Defendants honored that request. ECF No. 10 ¶ 19. The fact that, a year earlier, Defendants allowed Mr. Mello to opt his daughter out, rules out the inference that Cranston has a policy or custom of ignoring parental rights or directives. Thus, the Court finds that Mr. Mello's Amended Complaint fails to allege a *Monell* claim so Count III is dismissed.

### C.   First Amendment Retaliation – Count VI

Mr. Mello alleges that Defendants retaliated against him for exercising his parental rights by inviting a police presence to his child's concert to intimidate and harass him. Defendants move to dismiss, arguing that the conduct he alleges caused his injuries is not constitutionally protected so he does not have a First Amendment retaliation claim.

11

To state a First Amendment retaliation claim, Mr. Mello must first allege that his conduct was constitutionally protected. *Powell v. Alexander*, 391 F.3d 1, 17 (1st Cir. 2004). Once he passes that hurdle, he must allege that this constitutionally protected conduct was a "'substantial factor'... a 'motivating factor' for the alleged retaliatory decision." *Id.* The focus then shifts to the defendant who "may then avoid a finding of liability by show[ing] 'it would have reached the same decision... even in the absence of the protected conduct." *Id.* (quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Mr. Mello alleges that Mr. Vesey and Officer Rocchio "engaged in retaliatory conduct by treating Plaintiff's attendance at his daughter's school concert as a security threat, requesting police surveillance, and planning for body-worn camera monitoring and patrol supervision specifically because Plaintiff's daughter was a participant in the concert. Defendant Vesey's solicitation of law enforcement and Officer Rocchio's execution of that request had no legitimate basis and were intended to chill Plaintiff's exercise of his parental and constitutional rights." ECF No. 10 ¶ 57. He alleges that he "suffered fear of further retaliation, intimidation, harm, including emotional distress, reputational injury, and the chilling of his exercise of parental and constitutional rights." *Id.* ¶ 59.

Entering school property is not a constitutionally protected right. *See Ware v. Cranston Pub. Schs.*, C.A. No. 24-348JJM, 2025 WL 1549422, at *6 (D.R.I. May 30, 2025), *report and recommendation adopted*, No. 24-cv-348-JJM-LDA, 2025 WL 2052641 (D.R.I. July 22, 2025) (collecting cases). "[P]arents, as members of the

public, do not have a constitutional right to access school buildings and school officials have broad discretion in restricting such visitors." *Ware*, 2025 WL 1549422, at *6 (citing *Hannemann v. S. Door Cnty. Sch. Dist.*, 673 F.3d 746, 755 (7th Cir. 2012); *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576-78 (1972)). And the Court notes that Mr. Mello does not allege that he was prevented from entering the school to attend his daughter's concert or that any incident occurred before, during, or after the concert due to Officer Rocchio's presence.

Mr. Mello also does not allege any causal connection between his opt-out request and Officer Rocchio's presence at the concert. Mr. Mello made his request; Mr. Vesey consulted with the child's co-equal parent and followed her decision. Mr. Mello raised his concerns with the federal and state DoE, and the review process went on without incident. Independently, Mr. Vesey asked Officer Rocchio to be present at the school event, which, as Defendants note, is very typical for a school resource officer. Other than the fact that the opt-out request and concert occurred in the same school year, the Amended Complaint contains no allegations from which an inference can be drawn that one thing had to do with the other. Therefore, Mr. Mello's allegations of First Amendment retaliation fail to state a claim. The Court dismisses Count VI.

### D.    § 1983 Conspiracy – Count VII

In Count VII, Mr. Mello alleges that Mr. Vesey, Mr. Willette, and Ms. Morena conspired to deprive him of his Fourteenth Amendment rights "to direct the care, custody, and upbringing of his child" by ignoring his opt-out request in favor of

13

Ms. Morena's decision.  ECF No. 10 ¶ 62.  Defendants move to dismiss, arguing that Mr. Mello fails to allege that an agreement existed between them to violate his constitutional rights.

To survive a motion to dismiss a civil rights conspiracy claim, a plaintiff must allege "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Est. of Bennett v. Wainwright*, 548 F.3d 155, 178 (1st Cir. 2008) (citations omitted).  "The plaintiff must allege facts that show defendants knew 'the essential nature and general scope' of a particular plan, 'or at the least that the parties decided to act interdependently, each actor deciding to act only because he was aware that the others would act similarly.'" *Sánchez v. Foley*, 972 F.3d 1, 12 (1st Cir. 2020) (citations omitted).

Here, Mr. Mello alleges that "Defendants Vesey, Willette, and Morena reached an agreement and a meeting of the minds, the purpose of which was to deprive Plaintiff of his Fourteenth Amendment parental rights by unlawfully disregarding his valid PPRA opt-out.  This agreement was executed through a series of overt acts, including but not limited to: (a) Defendant Vesey's solicitation of a contrary opinion from Defendant Morena; (b) Defendant Morena's intentional provision of a contrary opinion with the knowledge it would be used to nullify Plaintiff's directive; and (c) the subsequent administration of the survey to Plaintiff's child with the knowledge and acquiescence of Defendant Willette."   ECF No. 10 ¶ 61.

14

This is not enough.  Plaintiff has put forth no direct or circumstantial evidence to support the inference that Mr. Vesey, Mr. Willette, and Ms. Morena entered into an agreement to inflict a wrong on him.  As the Court ruled when it dismissed Ms. Morena from the Amended Complaint, "Mr. Mello points only to Ms. Morena's exercising her own parental rights but that fact alone is insufficient to warrant an inference that she reached a meeting of the minds with Cranston officials to deprive Mr. Mello of his rights under the PPRA."  *See* Text Order, Feb. 19, 2026.  And his allegations against Mr. Vesey and Mr. Willette are similarly flawed – he alleges that Mr. Vesey asked Ms. Moreno about the opt-out decision and Mr. Wilette knew that he did.  Because Ms. Morena has equal parental rights under the Family Court order, she would have an equal say in whether her daughter participated in surveys, so Mr. Vesey was within his authority to consult her as well.  Defendants honored Ms. Morena's decision[12] over Mr. Mello but he fails to allege that they agreed to violate his parental rights in honoring hers.  Because Count VII in his Amended Complaint relies only on conclusory allegations, speculation, and improbable inferences, Mr. Mello's § 1983 conspiracy claim fails.  The Court dismisses Count VII.

### E.    Civil Conspiracy – Count VIII

Mr. Mello alleges that Mr. Vesey and Ms. Morena formed an agreement to commit an unlawful act by violating the express terms of the April 28, 2021 Family

---

[12] The DoE did tell Cranston that, while the survey administered did not violate the PPRA, it should have deferred to the decision to opt-out where two co-equal parents disagreed on the education decision.  ECF No. 10-1 at 10-13.  This observation does not inform a decision on the viability of a conspiracy claim though.

Court order, which vested him with equal and joint custodial authority, and to violate his rights under R.I. Gen. Laws § 16-21-21.1. ECF No. 10 ¶ 65.  The object of the conspiracy, he alleges, was to unlawfully strip Mr. Mello of his decision-making authority regarding his child's education and exposure to sensitive surveys.

Under Rhode Island law, "[a] civil conspiracy claim requires the specific intent to do something illegal or tortious." *Guilbeault v. R.J. Reynolds Tobacco Co.*, 84 F. Supp. 2d 263, 268 (D.R.I. 2000); *See, e.g., Fleet Nat'l Bank v. Anchor Media Television, Inc.*, 831 F. Supp. 16, 45 (D.R.I. 1993), *aff'd*, 45 F.3d 546 (1st Cir. 1995); *Stubbs v. Taft*, 88 R.I. 462, 149 A.2d 706, 708-709 (1959).  A properly alleged civil conspiracy claim requires a valid underlying intentional tort theory.  *Guilbeault*, 84 F. Supp. 2d at 268.

Reviewing the Amended Complaint as a whole, the Court concludes that Mr. Mello does not allege an agreement between Mr. Vesey and Ms. Morena.  The Court dismissed Ms. Morena from this lawsuit because it found that she was exercising her parental rights and that alone was not enough to infer that she intended to conspire with Mr. Vesey to deprive Mr. Mello of his parental rights.  He also does not allege an underlying tort to provide a basis for an alleged conspiracy. As such, Mr. Mello's state law civil conspiracy claim fails, and the Court dismisses Count VIII.

## IV.  CONCLUSION

For all these reasons, the Court GRANTS Defendants' Motion to Dismiss.  ECF No. 13.  Judgment shall enter for all the Defendants on all counts.

16

IT IS SO ORDERED.


*s/John J. McConnell, Jr.*

_____

JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

May 20, 2025